Dear Mr. Bailey:
As general counsel to the Sarasota Manatee Airport Authority, you have asked for my opinion on substantially the following question:
Does section 401.465(2)(a), Florida Statutes, require communication specialists within the Sarasota Bradenton International Airport's communications center to be trained and certified as "911 public safety telecommunicators" when they do not take E911 calls and they are not employed at a 911 "answering point?"
In sum:
Section 401.465(2)(a), Florida Statutes, does not require communication specialists within the Sarasota Bradenton International Airport's communications center to be trained and certified as "911 public safety telecommunicators."
The Sarasota-Manatee Airport Authority is a special district in Manatee and Sarasota Counties created for the purpose of "acquiring, constructing, improving, financing, operating, and maintaining airport facilities."[1] The authority has been designated a public instrumentality by the Legislature and is deemed to be exercising an essential governmental function.[2] You have advised this office that the authority owns and operates the Sarasota Bradenton International Airport ("SRQ") which serves scheduled passenger air carriers in Sarasota and Manatee Counties. The airport straddles the county line between the two counties, and a portion of the airport is located in the City of Sarasota. You question whether communication specialists working for the Sarasota Bradenton International Airport's communications center are required by section 401.465(2)(a), Florida Statutes, to be trained and certified as "911 public safety telecommunicators."
Amendments made during the 2010 legislative session to section 401.465(2)(a), Florida Statutes, the "Denise Amber Lee Act," require that, effective October 1, 2010, any person employed as a 911 public safety telecommunicator at a public safety answering point, as that term is defined in section 365.172(3)(a), Florida Statutes, [3] must be certified by the Florida Department of Health.[4] Certification requires the telecommunicator to receive training of no less than 232 hours and to pass an exam.[5] Every two years, the telecommunicator must receive 20 additional hours of training for certificate renewal.[6] The law also recognizes certain "grandfather" exceptions.[7]
Section 401.465, Florida Statutes, was amended by Chapter 2010-188, Laws of Florida, and those changes became effective July 1, 2010.[8] The bill described the situation regarding Florida's E911 system prior to enactment of Chapter 2010-188, Laws of Florida:
"Emergency dispatchers are often the initial point of contact for the public when emergency assistance is required. Emergency dispatchers receive emergency calls from the public requesting police, fire, medical or other emergency services. These personnel determine the nature and location of the emergency, determine the priority of the emergency, and communicate the nature of the call to police, fire, ambulance, or other emergency units as necessary and in accordance with established procedures. Emergency dispatchers receive and process 911 emergency calls, maintain contact with all units on assignment, and maintain status and location of police, fire, and other emergency units, as necessary. Emergency dispatchers may be trained to enter, update, and retrieve information from a variety of computer systems to assist callers."[9]
The bill also notes that a variety of training programs existed to train and certify emergency dispatchers including in-house training and certificate courses from private vendors.[10]
Chapter 2010-188, Laws of Florida, amended section 401.465, Florida Statutes, to expand the definition of a "public safety telecommunicator," formerly designated an "emergency dispatcher," to read as follows:
"`911 public safety telecommunicator emergencydispatcher' means a person employed by a state agency or localgovernment as a public safety dispatcher or 911 operator whose duties and responsibilities include the answering,receiving, transferring, and dispatching functions related to
911 calls; dispatching law enforcement officers, fire rescue services, emergency medical services, and other public safety services to the scene of an emergency; providing real-time information from federal, state, and local crime databases; or supervising or serving as the command officer to a person or persons having such duties and responsibilities. However, the term does not include administrative support personnel, including, but not limited to, those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel." (Underscored text was added by the amendment; text stricken through was deleted by the amendment.)
The intent of the Legislature in adopting Chapter 2010-188, Laws of Florida, appears to have been the professionalization of E911 service by creating a mandatory statewide system for the certification and training of these personnel;[11] expanding the duties and functions of public safety telecommunicators;[12] adopting penalties for violations of the act;[13] and extending funding options for implementing the provisions of the act.[14]
According to your letter, in Sarasota County, the central dispatch 911 answering point is the Public Safety Communications ("PSC") Center. The PSC is a joint venture between the Sarasota County Sheriff's Office and the Public Safety Communications Services section of the Sarasota County Emergency Services Business Center. The PSC provides full communications services for the police and fire departments in the area. In Manatee County, the county operates the Emergency Communications Center ("ECC") which serves as the 911 answering and dispatch center for Manatee County Emergency Medical Service and eleven local fire agencies. The ECC is also the call processing center for the Manatee County Sheriff's Office and the City of Bradenton Beach Police Department.
You advise that the SRQ has implemented, as required by federal law, [15] an airport emergency plan for responding to aircraft incidents and accidents, bomb incidents, structural fires, and other emergencies solely on the airport grounds. These functions are provided through SRQ's aircraft rescue and firefighting department. In addition, pursuant to federal law, [16] the airport employs its own police department, staffed by 15 law enforcement officers. These officers are authorized to make arrests for violations of state or federal law or applicable county or municipal ordinance if the violation occurs on airport grounds.
The firefighting, rescue, and law enforcement functions at SRQ are supported by an Airport Communications Center ("AIRCOM") located in the main airport terminal. Communication specialists within that department dispatch only airport emergency calls to SRQ firefighters, rescue, or law enforcement to various points of the airport where they may be needed. You state that AIRCOM utilizes two internal emergency telephone numbers: a "hotline" linking the air traffic control tower, aircraft rescue and firefighting department, and the communications center; and an internal emergency line that is only accessible to airport tenants, staff, and holders of security badges. Neither of these lines is capable of receiving calls placed to the telephone number "911" and E911 calls coming into the Sarasota and Manatee call centers are never transferred to AIRCOM or to SRQ firefighters, rescue, or police units. You state that when "911" is dialed from any pay phone, outgoing tenant or airport phone, or cell phone, the call goes to either the Sarasota PSC or Manatee ECC depending on the location of the caller. No "911" calls are routed to or transferred to AIRCOM communication specialists although Sarasota PSC and Manatee ECC do notify AIRCOM's communication specialists of any emergencies occurring on airport grounds once they have dispatched county units to the scene. Thus, the airport communications center would not appear to be an "answering point" for purposes of section 365.172(3)(a), Florida Statutes, which defines that term to mean "the public safety agency that receives incoming 911 calls and dispatches appropriate public safety agencies to respond to the calls."
While SRQ's communication specialists may be seen to be a type of public safety dispatcher, these employees of the airport do not answer, receive, transfer, or dispatch 911 calls. Nor does it appear that the airport serves as a public safety answering point as that term is defined in section 365.172(3)(a), Florida Statutes.
In sum, based upon the information you have provided and in view of the Legislature's intent that section 401.465, Florida Statutes, result in the professionalization of the E911 service, it is my opinion that section 401.465(2)(a), Florida Statutes, does not require communication specialists within the Sarasota Bradenton International Airport's communications center to be trained and certified as "911 public safety telecommunicators."
Sincerely,
 Pam Bondi Attorney General
PB/tgh
[1] Section 3(1), Ch. 2003-309, Laws of Fla.
[2] Id.
[3] Section 365.172(3)(a), Fla. Stat., defines a public safety "[a]nswering point" as "the public safety agency that receives incoming 911 calls and dispatches appropriate public safety agencies to respond to the calls."
[4] Section 401.465(2)(a), Fla. Stat.
[5] See Rule 64J-3.002, Fla. Admin. C.
[6] Rule 64J-3.003, Fla. Admin. C.
[7] See s. 401.465(2), Fla. Stat.
[8] See s. 5, Ch. 2010-188, Laws of Fla.
[9] See The Florida Senate Bill Analysis and Fiscal Impact Statement on CS/CS/CS/SB 742, dated April 8, 2010, by the Committee on Health and Human Services Appropriations.
[10] Id.
[11] See Item III, s. 3, p. 7, The Florida Senate Bill Analysis and Fiscal Impact Statement for CS/CS/CS/SB 742 prepared by the Health and Human Services Appropriations Committee, dated April 8, 2010. And see Op. Att'y Gen. Fla. 10-27 (2010).
[12] Section 3, Ch. 2010-188, Laws of Fla.
[13] Section 2, Ch. 2010-188, Laws of Fla.
[14] Section 1, Ch. 2010-188, Laws of Fla., amends s. 365.172, Fla. Stat., to add dispatching functions to uses of E911 fees.
[15] 14 C.F.R. s. 139.325.
[16] Title 49 C.F.R. Parts 1542 and 1544.